UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:21-CV-00110-JHM

STEVEN COLE SPURLIN                                                      PLAINTIFF

v.

SCOTT WILSON, et al.                                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motions for summary judgment filed by Defendants Scott Wilson and Whitley Swift (collectively, Wilson and Swift) (DN 72), and Whitley Adams, Leigh Garrett, and West Kentucky Correctional Healthcare (WKCH) (collectively, the WKCH Defendants) (DN 77).  Plaintiff Steven Cole Spurlin (Plaintiff) filed a response to the motions (DN 74), to which Wilson and Swift and the WKCH Defendants replied (DNs 93, 94).  For the following reasons, the motions for summary judgment will be granted.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's second amended complaint (DN 19)[1] alleges that between the dates of April 24, 2021 and April 28, 2022, Scott Wilson, MD, Leigh Garrett, LPN, Whitley Adams, LPN, and Whitley Swift, LPN, who are employees of WKCH and medical providers at Hopkins County Jail (HCJ), were negligent and deliberately indifferent to his medical needs in violation of the Eighth Amendment during Plaintiff's two periods of incarceration at HCJ.  Plaintiff alleges that he was not given pain medication or seen by a doctor for "4 broken ribs, nose, and eye socket/orbital roof," which he sustained during his arrest on April 22, 2021.  (DN 19, PageID.68).  Plaintiff alleges that

---

[1] Plaintiff's initial and amended complaints (DNs 1, 8) asserted claims against Wilson and Swift.  Defendants Garrett and Adams were subsequently added as defendants, as was their employer, WKCH.  (DN 30).  The second amended complaint is the operative pleading in this matter.

despite his attempts to seek treatment at HCJ, his symptoms of "blurry vision, headaches, swelling of [his] face, pain in [his] ribs, side, and back," went unaddressed by medical staff.  (*Id.,* PageID.69).

Plaintiff further alleges that he was released from HCJ on August 6, 2021, after which he went to the hospital and had pending follow-up appointments with specialists, but he was re-arrested on August 22, 2021, "before [he] could have surgery[.]"  (*Id.*, PageID.68).  Following his return to HCJ, Plaintiff alleges that he made multiple sick-call requests and filed grievances, but he was unable to see a doctor or receive pain medication.  (*Id.*, PageID.69).  Instead, medical staff reviewed his file and determined that "[there were] no new orders at this time[.]"  (*Id.*, PageID.68).  Plaintiff alleges that, at the time of the filing of the second amended complaint, he had "yet to see a doctor, be given anything for pain," or had "any of [his] medical needs addressed."  (*Id.*, PageID.69).

Plaintiff expounds upon his claims in a pre-trial memorandum filed on October 18, 2023.[2]  (DNs 71 through 71-3).  Therein, Plaintiff states that on August 23, 2021, Plaintiff was re-arrested and again housed at HCJ.  At the time of his booking, he had "multiple serious injury to the middle of the body (ribs), nose, and face."  (DN 71, PageID.257).  Plaintiff "made [a] verbal request to see medical but was denied the necessary care.  [He] also stated to staff he was referred to a specialist for his orbital injuries and was in severe pain due to having broken 4 ribs, nose as well."  (*Id.*, PageID.257-258).

On September 9, 2021, Plaintiff requested "to see medical staff and medical staff didn't reply until 9/12/21 and said 'will review the request with MD.'"  (*Id.*, PageID.258).  On September 22, 2021, "medical staff/Western Kentucky Correction Healthcare failed to act in a timely manner

---

[2] The Court's second revised scheduling order, dated June 21, 2023, provided deadlines for discovery, dispositive motions, and pre-trial memoranda.  (DN 61).

to request medical records by waiting 8 days after telling [Plaintiff] they would request his records." (*Id*.).  Plaintiff states he was in "serious pain and . . . needed medical care." (*Id*.).

On October 6, 2021, Plaintiff states that his medical records were reviewed, but medical staff "never came to see [Plaintiff] or made any new medical orders for medications for pain." (*Id*.).  Plaintiff again requested to see medical but was advised that the doctor "has no new orders." (*Id*.).  Plaintiff states that by January 12, 2022, he still had not been provided medical care.  Plaintiff "requested to be moved to another facility to have appropriate care and was denied." (*Id*., PageID.259).   On April 27, 2022, April 28, 2022, May 31, 2022, and June 1, 2022, Plaintiff requested medical attention but was not seen. (*Id*.).

Plaintiff states that he was transferred to Roederer Correctional Complex (RCC) on June 3, 2022, where he was given ibuprofen and Excedrin for his pain.  On June 8, 2022, x-rays were ordered, which revealed "chronic left sided 9th and 10th rib fracture and showed grossly intact orbital rims." (*Id*., PageID.260).  Plaintiff concludes that "RCC noticed the urgency and without hesitation prescribed pain medication and ordered x-rays and treatment." (*Id*.).

Plaintiff states that "the medical department of Hopkins County Jail which operates as West Kentucky Correctional Healthcare . . . ignored conditions, failed to provide treatment for diagnosed conditions, delayed treatment, interfered with accessible treatment, [made] medical decisions . . . [falling] below standards, [and] failed to follow treatment plan by provider." (*Id*., PageID.261).

To his pre-trial memorandum, Plaintiff attached records consisting of printouts of his HCJ Medical Request History, General Request History, and Grievance History, as well as "assorted medical records," in support of his contention that the defendants were deliberately indifferent to his serious medical needs and were "negligent to provide necessary medical care." (*Id*., PageID.256-257).

In lieu of a pre-trial memorandum, Wilson and Swift filed a motion for summary judgment on October 20, 2023, (DN 72), which was followed by the WKCH Defendants' motion for summary judgment shortly thereafter.  (DN 77).  Plaintiff filed a motion dated November 15, 2023, requesting an extension of time to respond to Wilson and Swift's motion for summary judgment. (DN 79).  On December 20, 2023, the Court granted Plaintiff's motion, ordering Plaintiff to file a response(s) to the motions for summary judgment within 30 days of the Court's order, cautioning that failure to comply with the Order will result in dismissal of the action.  (DN 88, PageID.507). The order further provided Wilson and Swift and the WKCH Defendants 14 days to file their replies.  (*Id*.).

Plaintiff's response to Wilson and Swift and the WKCH Defendants' motions for summary judgment was marked as filed by the Clerk of Court on January 25, 2024, six days after the Court's extended deadline.  (DNs 88, 91).  On the same day, Wilson and Swift and the WKCH Defendants sought dismissal of Plaintiff's claims based upon his failure to comply with the Court's December 20, 2023 order.  (DNs 89, 90).  However, Plaintiff signed his response on December 20, 2023. (DN 91, PageID.620).  The Court finds that Plaintiff's response was timely and considers the motions fully briefed and ripe for review.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (explaining the "prison mailbox rule").

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.   *Wilson and Smith*

Wilson and Smith seek summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim on the basis that Plaintiff fails to submit proof sufficient to establish the requisite objective and subjective components of such a claim under the relevant Sixth Circuit authority. (DN 72-1, PageID.340-344).

As part of their motion for summary judgment, Wilson and Swift submit Plaintiff's documentation produced during discovery, consisting of his jail and medical records, which they argue should be disregarded as inadmissible hearsay. (*Id.*, PageID.338; DN 72-2, PageID.346-395). Wilson and Smith contend Plaintiff's records nonetheless fail to demonstrate an Eighth Amendment violation. (DN 72-1, PageID.339).

To the extent that Plaintiff has raised a claim of medical malpractice, Wilson and Swift seek dismissal of this claim for his failure to provide expert proof as required by Kentucky state law. (*Id.*, PageID.340).

### B.    *The WKCH Defendants*

The WKCH Defendants seek summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim on the basis that Plaintiff fails to submit proof sufficient to establish the requisite objective and subjective components of such a claim under *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), and relevant Sixth Circuit authority. (DN 77-1, PageID.412-416).

The WKCH Defendants submit Plaintiff's jail and medical records, produced by Plaintiff during discovery and reproduced by Wilson and Swift in their motion for summary judgment. (DN 77-2, PageID.418-497). Like Wilson and Swift, the WKCH Defendants argue that these records are inadmissible hearsay and should be disregarded in evaluating a motion for summary judgment. (DN 77-1, PageID.411). Nonetheless, the WKCH Defendants argue that the records do not demonstrate an Eighth Amendment violation. (*Id.*).

To the extent that Plaintiff has raised a claim of medical malpractice, the WKCH Defendants seek dismissal of this claim for his failure to provide expert proof as required by Kentucky state law. (*Id.*, PageID.412).

C.      *Plaintiff's Response*

Plaintiff has filed a response addressing the collective defendants' motions for summary judgment.  (DN 91).  In support thereof, he submits an affidavit; correspondence from the Kentucky Department of Corrections; medical notes from HCJ; Deaconess Hospital Emergency Department records; Plaintiff's medical, general, and grievance request histories from HCJ; and medical records from Roederer Assessment Center at RCC.  (*Id*., PageID.617, DNs 91-1 through 91-6).

Plaintiff avers that the attached records fall within the Federal Rules of Evidence hearsay exceptions,[3] and argues that these records establish the objective and subjective components of the deliberate indifference standard.  Specifically, he asserts that his four broken ribs, nasal bone fracture, and left frontal orbital bone fracture are "serious medical needs that restricted [Plaintiff's] daily activities and caused severe pain, discomfort, emotional pain and worry[,] especially when he wasn't getting anything for pain and wasn't being treated."  (DN 91, PageID.607).  Additionally, Plaintiff asserts that he "made these injuries known to the nurses, staff, and presumably the doctor that his injuries have not healed, causing headaches, pain and vision problems," yet he was never seen by a doctor.  (*Id*.).  He claims that he "filed numerous sick calls . . . medical requests and grievances seeking treatment for his medical needs and pain medication."  (*Id*., PageID.608).  "That being said[,] the defendants were sufficiently aware of [Plaintiff's] condition and aware that not treating him would cause serious pain and harm, and they still chose to ignore his multiple requests . . . .  Not one time from 8-23-21 to his being transferred to RCC on 6-3-[22] did the nurse or doctor attempt to evaluate [Plaintiff] . . . ."  (*Id*.).

---

[3] Assuming the evidence is admissible, Wilson and Smith and the WKCH Defendants are entitled to summary judgment on the merits of Plaintiff's claim, as discussed herein.  Accordingly, the Court need not address the parties' arguments regarding admissibility.

With regard to Plaintiff's claim of negligence or medical malpractice, Plaintiff states that he "never specifically cited to any state law medical malpractice claims," but goes on to state that "[Plaintiff] has no need for an expert" because "the medical records and the voids in medical treatment" establish that Wilson and Swift and the WKCH Defendants were negligent in addressing Plaintiff's requests, "considering the wealth of documentation that he was dealing with broken ribs and a left nasal bone fracture extending to the orbital roof." (*Id.*, PageID.610).

### D.      Defendants' Replies

In their reply, Wilson and Swift urge the Court to dismiss Plaintiff's claims due to the untimely filing of his response to their motion for summary judgment. (DN 93, PageID.622). Wilson and Swift reiterate they are entitled to summary judgment because Plaintiff has not asserted a state law medical malpractice claim, and his deliberate indifference claim fails on the merits in the absence or proof of serious medical need or subjective intent of the medical providers. (*Id.*, PageID.623-627).

The WKCH Defendants have also filed a reply memorandum which mirrors the arguments made by Wilson and Swift. (DN 94, PageID.630-635).

### III.      STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

## IV.   DISCUSSION

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate indifference claim, the plaintiff must satisfy both an objective and subjective component. *Id*. (citations omitted).

The objective component requires a plaintiff to show that "the medical need at issue is sufficiently serious." *Id.* at 896 (internal quotations and citations omitted). "Such a medical need has been defined as one 'that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted)).

The Sixth Circuit has explained "that when an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment . . . or that it provided treatment so cursory as to amount to no treatment at all[.]" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (internal quotations and citations omitted). A serious medical need that is "so obvious that even a lay person" would recognize it does not require a plaintiff to present "verifying medical evidence" that the delay in care worsened or deteriorated the medical condition. *Blackmore*, 390 F.3d at 898. "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* However, for deliberate indifference claims "involving minor maladies or non-obvious complaints of a serious need for medical care," medical evidence of causation is required. *Id.*

"The subjective component requires a showing that prison officials have a sufficiently culpable state of mind in denying medical care." *Id.* at 895 (internal quotations and citations omitted). "Deliberate indifference 'entails something more than mere negligence.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). "Under *Farmer*, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). In other words, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* at 896 (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)) (internal quotation marks omitted).

Deliberate indifference to serious medical needs is distinguishable from an inadvertent failure to provide adequate medical care." *Jones v. Hiland*, No. 3:16CV-P127-JHM, 2016 WL 3659936, at *5 (W.D. Ky. July 1, 2016) (internal quotation marks omitted).  In this regard, it is well-settled that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Gibson v. Matthews*, 926 F.2d 532, 536-37 (6th Cir. 1991) (negligence of medical personnel does not state a claim under § 1983 for deliberate indifference to medical needs); *Westlake v. Lucas*, 537 F.2d 856, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

### A.    *Wilson and Swift*

Plaintiff claims that medical staff at HCJ[4] were deliberately indifferent to his serious medical needs when they "ignore[d] his multiple request for help, pain medication, and treatment[.]"  (DN 91, PageID.608).  He avers that from August 23, 2021, to June 3, 2022, "not one time . . . did the nurse or doctor attempt to evaluate [Plaintiff], pull him out of the cell, order any tests, x-rays, or treatment at all[,]" despite his medical records "clearly show[ing] serious medical conditions" and "referrals to specialists."  (*Id.*).

Wilson and Swift argue that Plaintiff fails to present proof to establish that he suffered a serious medical need or that either defendant acted toward him with malice or other ill intent.  (DN 72-1, PageID.340).  The Court agrees that there exists no genuine dispute as to either component of Plaintiff's deliberate indifference claim.

---

[4] Plaintiff does not attribute any specific acts or omissions to any of the individual defendants.  Reviewing Plaintiff's submissions liberally, and construing all inferences in his favor, the Court has attempted to discern how Plaintiff's allegations relate to the individual defendants based on the evidence of record.

1.     Objective Component

Plaintiff asserts that he was "arrested on 4-22-21 with 4 broken ribs 7-10th, left nasal bone fracture, depressed left frontal bone fracturing extending to left orbital roof."   (DN 91, PageID.606).  These injuries form the basis for Plaintiff's deliberate indifference claims.  Insofar as his claim relates to Wilson and Swift, Plaintiff alleges that they failed to provide medical treatment to Plaintiff during his second period of incarceration at HCJ from August 23, 2021 until his transfer to RCC.  (*Id*., PageID.608).  Specifically, Plaintiff states that from August 23, 2021 to June 3, 2022, he was not seen by medical staff, despite multiple sick calls, medical requests, and grievances.  (*Id*., PageID.608).  He asserts that he "was suffering from severe pain as a result of his injuries, and since, he has suffered vision loss, and a disfigured nasal bone[.]"   (*Id*., PageID.615).

Plaintiff's medical records show that he was brought to Deaconess Emergency Department by Kentucky State Police on April 22, 2021 with complaints of left posterior trunk pain.  (DN 72-3, PageID.384).[5]  CT scans from Deaconess dated April 23, 2021, reveal a left nasal bone fracture, chronic appearing left frontal bone fracture extending into the frontal sinus, and acute fractures of the left posterior seventh through tenth ribs.  (*Id*., PageID.389).  The provider notes state:

> Patient found to have acute appearing nasal bone fracture but he reports that it does not and has no tenderness over the nasal area.  Also found to have closed posterior rib fractures 7 through 10.  This is the area where he has tenderness . . . . Remainder of imaging without traumatic abnormality.  Patient is discharged into the care of police custody.

(*Id*., PageID.390).  Plaintiff was discharged in "stable" condition with diagnoses of closed fracture of multiple ribs on left side, and closed fracture of nasal bone.  (*Id*., PageID.390-391).  Additional

---

[5] For clarity and continuity, the Court cites to Plaintiff's records that have been reproduced by Wilson and Swift in their motion for summary judgment.  (DN 72).

records from Deaconess dated April 22, 2021, submitted by Plaintiff,[6] contain Plaintiff's discharge instructions, which state, "[p]lease return with new or worsening symptoms.  You have been found to have left-sided rib fractures.  Tylenol, Motrin for discomfort . . . . Nasal bone fracture that is nondisplaced can be followed up with primary care.  Medically cleared for incarceration."  (DN 91-6, PageID.586).

Following his arrest, Plaintiff was housed at HCJ from April 23, 2021 to August 6, 2021 (the first period of incarceration).  (DN 91, PageID.617).  During the first period of incarceration, Plaintiff was seen by medical staff at HCJ on five occasions.  (DN72-2, PageID.350).  A handwritten progress note from HCJ shows that Plaintiff requested pain relief from medical on April 24, 2021.  He was provided ibuprofen for three days and advised to "[increase] hydration, eat meals . . . rest."  (DN 91-1, PageID.530).

Plaintiff was released from HCJ on August 6, 2021, and presented to the Deaconess Emergency Department the following day.  (DN 91, PageID.606).  CT scans of the orbits dated August 7, 2021 revealed "normal orbits, old fracture deformities of the nasal bones and nasal septum."  (DN 72-3, PageID.395).  Chest x-rays revealed "no acute osseous abnormality" and "no acute disease."  (*Id.*, PageID.392).  Additional records from Deaconess, presented by Plaintiff, show that Plaintiff was discharged from the emergency department in "good condition," with a diagnosis of "facial pain."  He was prescribed diclofenac[7] and was provided follow-up orders for family medicine and ophthalmology in two days.  (DN 91-6, PageID.581-584).

---

[6] Plaintiff's records were submitted in connection with both his pre-trial memorandum (DN 71) and his response to the motions for summary judgment (DN 91).

[7] "Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild-to-moderate pain."  *Mayo Clinic—Drugs and Supplements*, https://www.mayoclinic.org/drugs-supplements/diclofenac-oral-route/description/drg-20069748 (last visited July 29, 2024).

Plaintiff returned to HCJ on August 23, 2021 (the second period of incarceration).  (DN 91, PageID.617).  Plaintiff placed a medical request at HCJ on September 9, 2021 to see a doctor for pain and headaches.  (DN 72-2, PageID.377).  A September 13, 2021, response indicated that Plaintiff's request would be reviewed with the doctor.  (*Id*.).  A handwritten note dated September 14, 2021 that appears to bear Swift's signature indicated, "[g]et medical records.  Will review chart once records available."  (*Id*.).  On October 1, 2021, Wilson noted that he reviewed Plaintiff's chart and concluded, "patient has had a nasal fracture, [no] airway issues.  Can have elective evaluation at patient's discretion but [nothing] medically necessary or urgent/emergent."  (DN 72-3, PageID.383).

Plaintiff was transferred to RCC on June 6, 2022.  (DN 91, PageID.617).  On June 8, 2022, Plaintiff underwent imaging of his chest and facial bones at Roederer Assessment Center.  Plaintiff's chest x-ray revealed "chronic left-sided 9th and 10th rib fracture.  No acute bony abnormality . . . . No acute pulmonary finding."  (DN 91-6, PageID.578).  Facial x-ray showed that the "osseous structures are unremarkable including grossly intact orbital rims.  Maxillary sinuses are unremarkable.  No blowout fracture is seen . . . . Unremarkable facial series."  (*Id*., PageID.579).  On June 15, 2022, Plaintiff's medical records were reviewed by medical staff at RCC.  The encounter notes state, "Xrays ordered from h/p reviewed, no acute fractures seen, [patient] with chronic rib [fracture] 9-10 that was noted."  (*Id*., PageID.580).

First, Plaintiff's assertion of a left frontal orbital bone fracture stemming from his April, 2021, arrest is unsupported by the record.  CT scans dated April 23, 2021 from Deaconess Emergency Department do not reflect an acute left frontal bone fracture, but one that was noted as "chronic appearing."  (DN 72-3, PageID.388; DN 91, PageID.606).  On August 7, 2021, CT scans of his orbital bones were normal.  (DN 72-3, PageID.394-395).  And x-rays taken at RCC on June

13, 2022 revealed "unremarkable" osseous structures and "grossly intact orbital rims." (DN 91-6, PageID.580). Plaintiff's chronic frontal/orbital bone fracture is at most, a minor injury that does not establish the existence of serious medical need. *See*, *e.g.*, *Kirkland v. Keeling*, No. 12-15275, 2014 WL 2763649, at *4 (E.D. Mich. June 18, 2014) (healed ankle fracture was "a minor injury that is not sufficiently serious to give rise to a constitutional violation.").

Second, Plaintiff's injuries of left nasal bone fracture and left rib fractures, sustained in April of 2021, did not constitute serious medical needs within the meaning of the Eighth Amendment's prohibition against deliberate indifference standard during the second period of incarceration. While broken bones can present a serious medical need under certain circumstances, *see*, *e,g.*, *Gray v. Dorning*, 202 F.3d 268 (6th Cir. 1999) (finding that a broken wrist was serious medical need where plaintiff fell out of a top bunk and asserted that he had suffered a fracture), there is no evidence in the record that Plaintiff's previous nose and rib fractures required medical treatment, were obvious or apparent to a lay person, or were exacerbated by a delay in treatment. *See Jones*, 625 F.3d at 941; *Blackmore*, 390 F.3d at 898.

Here, the record demonstrates that Plaintiff's injuries did not warrant medical treatment after his first Emergency Department admission in April, 2021, where he was instructed to take Tylenol and Motrin for discomfort stemming from his rib fractures. He was discharged to police custody in stable condition. Notably, he did not complain of tenderness over his nondisplaced nasal fracture at that time. (DN 72-3, PageID.390). Likewise, during Plaintiff's subsequent Emergency Department admission in August, 2021, he was diagnosed with facial pain, prescribed diclofenac, and was discharged in good condition. (DN 91-6, PageID.581-582). Subsequent imaging from Plaintiff's transfer to RCC similarly do not reveal any acute injuries, or that his

injuries worsened following his period of incarceration at HCJ. Instead, those records demonstrate "normal" and "unremarkable" results. (*Id.*, PageID.578-580).

Plaintiff therefore fails to satisfy the objective component of his deliberate indifference claim stemming from his fractured nose and ribs. *See Burgess v. Fischer*, 735 F.3d 462, 470, 476-477 (6th Cir. 2013) (facial and head fractures, which were not obvious and discovered after CT scans were taken later, did not satisfy objective component where plaintiffs failed to show that a delay in treatment caused injuries to worsen). Taking as true Plaintiff's assertions that his complaints of pain went unaddressed during the second period of incarceration at HCJ beginning August 23, 2021, this Court has previously found that "[p]ain alone is not a serious medical need that warrants constitutional scrutiny." *Browder v. Hopkins Cnty.*, No. 4:22-CV-65, 2023 WL 5192034, at *6 (W.D. Ky. Aug. 11, 2023); *see also Burgess*, 735 F.3d at 477 (6th Cir. 2013) ("Plaintiffs claim only that Burgess endured hours of pain, which is insufficient to establish his claim.").

Plaintiff cites to a Seventh Circuit case, *Hayes v. Snyder*, 546 F.3d 516 (7th Cir. 2008), for the proposition that there is no requirement that a prisoner provide objective evidence of his pain to establish a serious medical need. *Id.* at 523. In *Hayes*, the Circuit Court found that the plaintiff-prisoner's subjective complaints of pain were sufficient to withstand summary judgment on the objective component of the deliberate indifference standard. *Hayes*, aside from falling outside the scope of controlling Sixth Circuit authority, is also distinguishable. The plaintiff in *Hayes* suffered testicular growths and cysts, painful urination, and excruciating pain. The plaintiff tried to obtain a referral to a specialist but was not permitted a referral by the defendant-physician. He was ultimately diagnosed with Peryronie's disease following his release from incarceration. The Seventh Circuit concluded that "[a] trier of fact could conclude in Hayes's case that even a

layperson would realize that a man with cysts and growths on his testicles, who could not even urinate without extraordinary measures and who repeatedly complained of excruciating pain, would require a doctor's attention.  Even more so, a reasonable physician should have realized that the patient was trying to bring a serious condition to his or her attention."  *Id.* at 523.

Here, Plaintiff's medical records were reviewed by Dr. Wilson who opined that there was no medical urgency based upon Plaintiff's imaging and evaluations which, as of August 7, 2021, showed "normal orbits," "old fracture deformities of the nasal bones and nasal septum," and "no acute disease/no acute osseous abnormality" of the chest.  (DN 72-3, PageID.392-395).  There was no acute injury or active diagnosis beyond Plaintiff's uncorroborated, subjective complaints of pain, in contrast with the plaintiff in *Hayes*, whose complaints of intense pain combined with his severe symptomatology were obvious and apparent, such that his condition satisfied the objective component.  Considering Plaintiff's argument, the Court still concludes that in this case, his subjective complaints of pain are insufficient to create a triable issue of fact as to the objective component. *See Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *5 (6th Cir. Feb. 24, 2017) (plaintiff's assertion that he was in pain while he waited to be seen by a dentist does not establish that he suffered a sufficiently serious medical condition); *accord, Mays v. Pynnonen*, No. 2:17-CV-167, 2019 WL 4439367, at *1 (W.D. Mich. Sept. 17, 2019) (plaintiff's subjective complaints of pain will not satisfy the objective prong of the deliberate indifference standard); *cf. Vaughn v. City of Lebanon*, 18 F. App'x 252, 275 (6th Cir. 2001) (acknowledging that "subjective feelings of pain may, *if sufficiently egregious*, satisfy the objective component of *Farmer*") (emphasis added).

2.    <u>Subjective Component</u>

As relevant to Wilson and Swift, the record reveals that in September 2021, Plaintiff requested to speak with a physician at HCJ.  (DN 72-2, PageID.349).   Plaintiff was informed that his medical records would be obtained and reviewed by a physician.  (*Id*.).  On October 1, 2021, Wilson reviewed the records and determined there was nothing medically necessary or urgent/emergent at that time.  Between September 2021, and June 2022, Plaintiff made numerous requests for x-rays, an eye patch, pain medication, and to be transferred to a different facility or to a hospital, which were denied by medical staff.  (*Id*., PageID.347-349).  Plaintiff acknowledges being seen by a nurse at HCJ for a check-up during the second period of incarceration (DN 91, PageID.617), but voiced multiple objections to Wilson's assessment and continued to request that he be seen by a doctor.  (DN 72-2, PageID.347-349).  Plaintiff's disagreement with Wilson's assessment that there were no new treatment orders presents "a difference of opinion between a prisoner and a doctor over diagnosis or treatment" and therefore "fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need."  *Carr v. Parker*, No. 98-6395, 1999 WL 1206879 at *1 (6th Cir. 1999); *see also*, *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim.").

While Plaintiff asserts a complete absence of medical attention during the second period of incarceration, the record reveals that Plaintiff did receive an annual check-up, and that his records were reviewed by a physician after which it was determined that there were no new orders for treatment and no medical necessity.  Primarily, Plaintiff complains of HCJ medical staff's inattentiveness to his pain needs and a general delay in unspecified treatment.  Read in the light

most favorable to him, the allegations amount to no more than medical negligence, which does not give rise to a constitutional infirmity. "Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm." *Daugherty v. Ramey*, No. 5:19-CV-P31-TBR, 2019 WL 2330898, at \*2 (W.D. Ky. May 31, 2019) (citing *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at \*2 (6th Cir. Dec. 5, 1994) (per curiam) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner."). And while Plaintiff may have desired to see a specialist[8]— presumably for his eye and nose—nothing in the record supports the need for medical intervention. *Rhinehart*, 894 F.3d at 740 ("An inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim") (internal citation and quotation marks omitted).

Therefore, the Court finds that Wilson and Swift have met their burden with regard to this claim and that Plaintiff has offered no admissible evidence to present a genuine issue of material fact as to either component of a deliberate indifference claim. Wilson and Swift are therefore entitled to summary judgment on this claim.

### B.    *The WKCH Defendants*

The WKCH Defendants advance substantially the same arguments as Wilson and Swift and rely upon the same evidence of record. (DN 77-1, PageID.411-416). Specifically, they argue that Plaintiff's deliberate indifference claim fails in the absence of proof that he suffered a serious medical need or that the WKCH Defendants acted with malice or ill will. (*Id*., PageID.412). The

---

[8] Mindful of its obligation to construe facts and draw all reasonable inferences in Plaintiff's favor, the Court notes that Plaintiff's assertions that he required treatment by a specialist and/or surgical intervention, and that he suffered vision loss, sinus complications, and psychological issues as a result of the delay in medical treatment, are not supported by the record. (DN 91, PageID.608, 613, 615, 620).

Court agrees that there exists no genuine dispute as to either component of Plaintiff's deliberate indifference claim.

        1.    <u>Objective Component</u>

As stated earlier, Plaintiff has not established a serious medical need stemming from a left orbital bone fracture, which was chronic in nature and presented as facial pain treated only by anti-inflammatory medication. This is a minor injury that does not fall within the purview of the Eighth Amendment. *See Kirkland*, 2014 WL 2763649, at *4 (healed ankle fracture was "a minor injury that is not sufficiently serious to give rise to a constitutional violation.").

Likewise, Plaintiff's nasal and rib fractures, diagnosed in April, 2021, also did not present a serious medical need during either period of incarceration. The record shows that Plaintiff was treated with ibuprofen during his first period of incarceration. (DN 91-6, PageID.530). By August, 2021, Plaintiff's facial and chest imaging was normal and he was discharged from Deaconess in "good condition" with anti-inflammatory medication for facial pain. (DN 91-6, PageID.581-584). In September, 2021, Plaintiff's medical records were reviewed and he was found to need no immediate treatment. (DN 72-2, PageID.377-383). Finally, Plaintiff's conditions did not worsen as a result of a delay in treatment, as his subsequent imaging at RCC was unremarkable and he was again treated only with anti-inflammatory medication for pain. (DN 91-6, PageID.578-580). At most, Plaintiff has established the existence of minimal to moderate pain arising from these injuries, which, standing alone, is not sufficient to raise an issue of fact as to the objective component of the deliberate indifference standard. *See Weatherspoon*, 2017 WL 3923335, at *5; *see also*, *May*, 2019 WL 4439367, at *1.

2.    <u>Subjective Component</u>

As to the subjective component, the evidence pertaining to providers Garrett and Adams appear to relate to Plaintiff's first period of incarceration at HCJ—from his arrest in April, 2021 to August, 2021.  These records show that on May 8, 2021, Plaintiff requested to see a physician for rib pain.  (DN 72-2, PageID.350, 375).   A May 9, 2021, notation, unsigned by the provider, indicates that Plaintiff was seen by medical.  (*Id*., PageID.375).  A June 7, 2021, request to be seen for an abscessed tooth, indicates that Plaintiff was seen by medical, signed by Adams on June 8, 2021.  (*Id*., PageID.350, 376).  Plaintiff requested to see a physician for his eye and ribs on July 10, 2021.  (*Id*., PageID.350).  Garrett noted that Plaintiff was seen by medical on July 12, 2021.  (*Id*., PageID.353).  A sick call request dated June 16, 2021 reveals an illegible "purpose of request," but contains a note by Adams that Plaintiff was seen by medical on June 16, 2021.  (*Id*., PageID.354).

For Plaintiff's first period of incarceration, Plaintiff's Medical Request History from HCJ reveals that Plaintiff was seen by medical on at least five occasions upon complaints of eye, rib, and nose pain.  (DN 72-2, PageID.350).  The records therefore establish that Plaintiff was seen by medical routinely throughout his first period of incarceration.  Plaintiff thus appears to take issue with the adequacy of his treatment—he states that he "was given ibuprofen one time for 3 days," and was "never seen by the doctor."  (DN 91, PageID.607).  However, his disagreement with respect to his pain management at HCJ does not give rise to an Eighth Amendment violation.  *See Dahms v. Correct Care Sols., LLC*, No. 3:18-CV-63, 2019 WL 4544350, at *7 (W.D. Ky. Sept. 19, 2019) ("Plaintiff alleges a disagreement with the prison staff's treatment plan, not a deliberate indifference to his pain; such a disagreement does not rise to an Eighth Amendment claim.").

With respect to Plaintiff's claim that he desired to see a doctor, but was not seen by one despite his multiple requests, this Court has previously observed that,

> A prisoner is entitled to medical care.  This does not mean, however, that a prisoner is constitutionally entitled to see a doctor every time he wishes.  In many instances, evaluation by a trained nurse prior to a doctor's examination may be sufficient medical treatment for the purposes of the Eighth Amendment.   A nurse or physician's assistant may be able to effectively treat a prisoner without requiring a doctor's assistance. . . .   Mere disagreement with the nature of one's medical treatment is not sufficient, standing alone, to constitute deliberate indifference to a serious medical need.

*Cook v. S. Health Partners*, No. CIV A 4:08CV-P128-M, 2009 WL 1409713, at *2 (W.D. Ky. May 20, 2009) (citing *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006)).  Thus, Plaintiff cannot prevail on his deliberate indifference claim simply because he was seen by non-physician medical staff during his first period of incarceration.  In the instant case, Plaintiff does not explain how his conditions worsened as a result of seeing HCJ nurses instead of a physician.  More importantly, the records submitted by Plaintiff from his August, 2021 Emergency Department admission and subsequent incarceration at RCC bely his claims that his conditions actually worsened.  (DN 91, PageID.613; DN 91-6, PageID.578-584).  Again, while Plaintiff may have disagreed with the treatment by medical staff during his first period of incarceration at HCJ, this is insufficient to create an issue of fact as to the subjective component.  *See Cook*, 2009 WL 1409713, at *2.

Therefore, the Court finds that the WKCH Defendants have met their burden with regard to this claim and that Plaintiff has offered no admissible evidence to present a genuine issue of material fact as to either component of a deliberate indifference claim.  The WKCH Defendants are therefore entitled to summary judgment on this claim.

### C.     State Law Medical Malpractice Claim

Wilson and Swift and the WKCH Defendants seek dismissal of Plaintiff's state law medical malpractice claim on the grounds that Plaintiff has failed to submit expert proof or testimony.  (DN 72, PageID.340; DN 77-1, PageID.412).  The Court need not address these arguments.  Having granted summary judgment for Wilson and Swift and the WKCH Defendants as to all of the federal-law claims against them, to the extent that Plaintiff alleged a state law medical malpractice claim (DN 19, PageID.68, DN 91, PageID.610-611), the Court will dismiss it with respect to both sets of defendants.  *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) (where "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

## V.     Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the motions for summary judgment by Wilson and Swift (DN 72) and the WKCH Defendants (DN 77) are **GRANTED**.    All federal claims against all Defendants are dismissed with prejudice.  Plaintiff's remaining state law claims are dismissed without prejudice. The Court will enter a Judgment consistent with this Memorandum Opinion and Order.

Date:   August 8, 2024

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge

United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.015